IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| LOUIS A. PICCONE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:15cv536 (JCC/TCB) |
| | ) | |
| UNITED STATES PATENT AND | ) | |
| TRADEMARK OFFICE et al. | ) | |
| | ) | |
| Defendants. | ) | |

**M E M O R A N D U M   O P I N I O N**

Four motions are now before the Court in this matter: a motion to dismiss filed by Defendants Lee, Covey, Griffin, and George [Dkt. 18]; and motions to dismiss and for summary judgment filed by Defendant United States Patent and Trademark Office (USPTO). [Dkt. 22][Dkt. 23][Dkt. 24] For the following reasons, the Court grants Defendants' motions to dismiss and motion for summary judgement.

**I. Background**

At the motion to dismiss stage, the Court must read the complaint as a whole, construe the complaint in a light most favorable to the plaintiff, and accept the facts alleged in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The following facts, taken from the complaint, parties' briefs and the administrative record are undisputed

1

unless otherwise indicated. Plaintiff Louis A. Piccone ("Plaintiff" or "Piccone"), is an attorney licensed to practice law in Pennsylvania who is also a registered practitioner before the USPTO. (Compl. [Dkt. 1] ¶ 4.) Plaintiff has been a registered patent attorney before the USPTO since 1997. (*Id.* at ¶ 6.) In the years since 2008, Plaintiff has taken on a series of Pro Bono child custody cases. (*Id.* at ¶¶ 7-8.) On December 10, 2014, the USPTO filed a complaint and notice of disciplinary proceedings against Plaintiff, alleging that Plaintiff had engaged in the unauthorized practice of law. (*Id.* at ¶ 10.) Specifically, the USPTO's disciplinary complaint alleged that Plaintiff had been suspended form the Pennsylvania Bar on September 20, 2013, through August 13, 2014, but Plaintiff prosecuted a trademark application on behalf of William Windsor during this time period. (*Id.* at ¶¶ 58-59; Individual Defendants' Memorandum [Dkt. 19] at 5.) The disciplinary complaint also alleged that Plaintiff had engaged in the unauthorized practice of law by representing individuals in matters in jurisdictions in which he was neither licensed nor admitted *pro hac vice.* (Compl. at ¶ 7.)

The USPTO disciplinary complaint resulted from an Office of Enrollment and Discipline ("OED") investigation into Mr. Piccone and subsequent determination that probable cause existed. (Indiv. Def.'s Mem. at 5.)

The USPTO maintains a register of attorneys and agents authorized to represent others in proceedings before the agency according to a scheme set down at 37 C.F.R. §11 pursuant to authority granted by 35 U.S.C. §2(b)(2)(D). The OED investigates allegations of misconduct on the part of practitioners who are registered to represent others before the agency. 37 C.F.R. § 11.19. Such an investigation may begin after the OED director receives a written submission that presents possible grounds for discipline of a specified practitioner. 37 C.F.R. § 11.1. Upon conclusion of an investigation, the OED Director may close the investigation with no action; issue a warning, enter into an agreement with the practitioner to settle the matter, or institute formal charges upon the approval of the Committee on Discipline. 37 C.F.R. §11.22(i). The Committee on Discipline decides if probable cause exists to bring disciplinary charges against the practitioner. 37 C.F.R. §11.32. Upon a determination of probable cause by the Committee, the OED Director has discretion to file a disciplinary complaint like the one filed against Plaintiff, but is not required to file such a complaint. *Id.* Disciplinary proceedings are then heard by an administrative law judge ("ALJ") sitting as a "hearing officer" who is not under the supervision of the USPTO Director or the OED Director. 37 C.F.R. §11.39. Once disciplinary proceedings have been

instituted, the ALJ may authorize discovery, conducts a hearing at which both parties may present documentary evidence and witness testimony, and ultimately delivers a decision on the complaint. 37 C.F.R. §§11.50-52. Once the ALJ has issued a decision, either party may appeal the decision to the director of the USPTO. 37 C.F.R. § 11.55. Once the USPTO Director has entered a final decision, the practitioner may *then* file a petition for review of the USPTO's decision before the United States District Court for the Eastern District of Virginia. *See* 35 U.S.C. § 32; 37 C.F.R. § 11.57.

On September 15, 2014, Plaintiff filed a Freedom of Information Act ("FOIA") Request to obtain documents concerning the USPTO investigation of Plaintiff's conduct. (Compl. At ¶ 12). William Griffin, the FOIA coordinator for the OED, identified the OED staff attorneys responsible for the investigation of Plaintiff, Dahlia George and Leonardo Villarreal Alejandro, as well as OED paralegal Hannah Robinson, as the individuals most likely to have responsive documents nd asked them to respond to the request. (USPTO's Mem. [Dkt. 26] at 6.) After a search of their files, Ms. George and Mr. Villarreal found only information protected from disclosure because it related to the ongoing law enforcement investigation against Plaintiff, and disclosure at this stage would have impeded the investigation. (*Id.*) Ms. Robinson collected all

official correspondence regarding Mr. Piccone from OED's proprietary database and provided them to the USPTO FOIA Office for release. (*Id.* at 6-7.) The USPTO then responded to Plaintiff's FOIA request on October 20, 2014, noting that it had construed Plaintiff's request as solely for records relating to any OED investigation and that he would need to submit a more specific request if he had intended the USPTO to search for any other files, and producing to Plaintiff 410 pages of documents. (*Id.;* Compl. at ¶ 12). On November 10, 2014, Plaintiff appealed the initial FOIA response. (Compl. at ¶ 17.) On December 2, 2014, in response to this appeal, Ms. Robinson, Ms. George, and Mr. Villareal conducted a second search of their emails, including variations of Mr. Piccone's name and investigatory file number. (USPTO's Mem. at 7.) Ms. Robinson also conducted a second search of OED's record system, and also checked a central computer drive and a SharePoint site used in investigations for records regarding Mr. Piccone. (*Id.*) All of the documents identified in this second search were protected because, *inter alia*, they related to the ongoing law enforcement investigation against Plaintiff, and disclosure at this stage would have impeded the investigation. (*Id.* at 8.) On December 10, 2015, the USPTO denied Plaintiff's FOIA appeal of November 10, 2014, explaining that the USPTO had correctly applied the FOIA exemptions identified in its October 20, 2014 response.

5

(*Id.*; Compl. at ¶ 18.) On April 23, 2015, Mr. Piccone filed the complaint in the instant action seeking recovery for alleged constitutional violations by individual-capacity defendants, declaratory relief from the disciplinary policies and proceedings of the USPTO, and alleging that the USPTO had violated the Privacy Act and seeking review of Plaintiff's September 18, 2014 FOIA request. (Compl. at ¶¶ 40-93.) On August 3, 2015, the USPTO issued a supplemental release to Plaintiff of 1538 pages of documents from his investigatory file as responsive to his September FOIA request upon determination by the USPTO that release of the documents would no longer impede the law enforcement investigation against Plaintiff. (USPTO's Mem. at 9.) Mr. Piccone's disciplinary proceedings are still pending; his hearing is set for some time this month, October, 2015. (*Id.* at 6.)

## II. Legal Standard

Defendants move to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) and Federal Rule of Civil Procedure 12(b)(1), and move for summary judgement pursuant to Federal Rule of Civil Procedure 56. "While the court must accept well-pleaded allegations as true when ruling on a Rule 12(b)(6) motion, the court need not accept as true legal conclusions disguised as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 679-81 (2009). Therefore, a pleading that

offers only a "formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). Nor will a complaint that tenders mere "naked assertion[s]" devoid of "further factual enhancement." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557. "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; importantly, [a Rule 12(b)(6) motion] does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999) (citation omitted) (internal quotation marks omitted).

"[I]n passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982). A motion pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the Court's subject matter jurisdiction over the pending action. "Federal courts are courts of limited jurisdiction, and we presume that a cause lies outside this limited jurisdiction. The burden of establishing the contrary rests upon the party asserting jurisdiction." *Wheeling Hosp.,*

7

*Inc. v. Health Plan of the Upper Ohio Valley, Inc.*, 683 F.3d 577, 583-84 (4th Cir. 2012) (citation omitted).

Summary judgment is appropriate when the pleadings and the record demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In reviewing the record on summary judgment, the Court "must draw any inferences in the light most favorable to the non-movant" and "determine whether the record taken as a whole could lead a reasonable trier of fact to find for the non-movant." *Brock v. Entre Computer Ctrs., Inc.*, 933 F.2d 1253, 1259 (4th Cir. 1991) (citations omitted). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986), 477 U.S. at 249. Where there is conflicting evidence, the court must credit the evidence of both sides and acknowledge that there is a genuine issue of material fact that cannot be resolved by summary judgment. *See Tolan v. Cotton*, 134 S. Ct. 1861, 1868-69 (2014) (stating that summary judgment is inappropriate where each side has put forward competent evidence that raises a dispute about a material fact).

### III. Analysis

The Court first addresses the individual-capacity

Defendants' 12(b)(6) motion to dismiss Plaintiff's Bivens claim before turning to Defendant USPTO's 12(b)(6) motion to dismiss Plaintiff's "Privacy Act" claim, then to USPTO's 12(b)(1) motion to dismiss Plaintiff's requests for declaratory judgement, and finally to USPTO's Rule 56 motion for summary judgement on Plaintiff's FOIA claim.

### A. Plaintiff's Bivens Action

Because a *Bivens* action is a judicially-created remedy, the first question the Court must face is whether a Bivens remedy is the correct remedy for the particular violation of a constitutional right alleged. *Wilkie v. Robbins*, 551 U.S. 537, 549-550 (2007). A Bivens remedy "is not an automatic entitlement no matter what other means there may be to vindicate a protected interest, and in most instances [the Supreme Court has] found a *Bivens* remedy unjustified." *Id.* When determining whether to create a *Bivens* cause of action in response to a new alleged violation of constitutional rights, "expansion of a *Bivens*-based cause of action . . . is the exception, not the rule." *Cioca v. Rumsfeld*, 720 f.3d 505, 510 (4th Cir. 2013). *See also Correctional Servs. Corp. v. Malesko*, 534 U.S. 61,68 (2001)([the Court has] consistently refused to extend *Bivens* liability to any new context or new category of defendants."). "The Court has therefore on multiple occasions declined to extend *Bivens* because Congress is in a better position to decide

9

whether or not the public interest would be served by the creation of new substantive legal liability." *Holly v. Scott*, 434 F.3d 287, 290 (4th Cir. 2006)(internal citations omitted).

In determining whether or not to create a new *Bivens* remedy, the Court employs a two step analysis: first, is there some alternative remedial process; and second, if an alternative remedial process is unavailable, the Court must consider whether or not there are special factors counselling against creation of a new cause of action. *Lebron v. Rumsfeld*, 670 F. 3d 540 (4th Cir. 2012). Here, Plaintiff has an adequate alternative process by which he can seek relief from Defendants' alleged wrongful prosecution of his USPTO disciplinary action by pursuing the extensive and satisfactory hearing and appeal procedures laid down in 37 C.F.R. §11 pursuant to the authority granted by Congress in 35 U.S.C. §2(b)(2)(D). In fact, Plaintiff is already pursuing those alternative avenues by contesting the disciplinary complaint before the ALJ. (*see* USPTO's Mem. at 6.) Even if Plaintiff loses his case before the ALJ, 37 C.F.R. §11 provides further procedures including appeal to the USPTO Director and *then*, later, to this Court. Because Plaintiff's claims regarding the baseless nature and political motivations of Defendants' investigation and prosecution are questions properly raised and resolved through the thorough, entirely adequate regulatory scheme the USPTO has devised pursuant to the

10

valid authorization of Congress, this Court will not create a Bivens action to create a parallel avenue for Plaintiff to recover financial damages where Congress has not done so. Accordingly, the Court dismisses the first Count III.

### B. Plaintiff's "Privacy Act" Claim

The Court assumes that Plaintiff means to allege a claim under 5 U.S.C. § 552 when he asserts his "Privacy Act" claim. (Compl. ¶¶ 47-53.) In order to recover under a 5 U.S.C. § 552 theory of wrongful disclosure Plaintiff must prove (1) a violation of a Privacy Act provision; (2) that the agency's decision was intentional or willful; (3) that the violation caused "adverse effects"; and (4) that the plaintiff suffered actual damages. *Thompson v. Dep't of State,* 400 F. Supp.2d 1, 8 (D.D.C. 2005). Here, Plaintiff's complaint alleges no actual facts which would satisfy any of these four requirements past a recitation of the elements of a Privacy Act Claim and an unsupported assertion that "The PTO has failed to maintain accurate information about Plaintiff in its records in order to prejudice Plaintiff." (Compl. ¶¶ 47-53) Plaintiff's complaint with regards to his Privacy Act claim is, as with most of the other claims advanced by Plaintiff, nothing more than exactly the kind of "formulaic recitation of the elements of a cause of action [which] will not do." *Iqbal*, 556 U.S. at 678; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). Plaintiff attempts

11

to bolster his factual allegations in his Memorandum in Opposition to the USPTO's Motion to Dismiss, alleging that his claim is based upon "the Defendants mailing copies of requests for information ("RFI") containing allegations of the unauthorized practice of law to various addresses at which Plaintiff has not now, nor ever in the past, resided." (Pl.'s Opp'n to USPTO at 40.) However, these allegations appear nowhere in the complaint, and raising them now, in his opposition to Defendant's motion to dismiss, cannot save Plaintiff's facially deficient complaint. Even if it could, Plaintiff fails to explain how even these allegations are sufficient to prove a violation of the privacy act if true, merely making a conclusory assertion that they do. As Plaintiff fails to allege facts which would make out a successful claim under the Privacy Act, the Court grants Defendants' motion and dismiss Count II of Plaintiffs complaint.

### C. Plaintiff's Claims for Declaratory Relief

Plaintiff brings claims Second Count Three[1] through Count Sixteen under the guise of the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201. However, the DJA "permits federal courts to issue declaratory judgments only in cases of 'actual controversy'" *Bell Atlantic Cash Balance Plan v. E.E.O.C.*, 976 F. Supp. 376, 379 (E.D. Va. 1997)(quoting *Aetna Life Ins. Co. v.*

---

[1] Plaintiff's complaint contains 2 "Count III"s.

*Haworth*, 300 U.S. 227,239-40 (1937). The DJA does not confer jurisdiction where the underlying federal question is not yet ripe for decision. *Id.* Plaintiff's USPTO disciplinary hearing is still ongoing. (USPTO's Mem. at 8.) In *Automated Merchandising Systems, Inc. v. Lee*, 782 F.3d 1376 (Fed. Cir. 2015), the Federal Circuit determined that the USPTO's decision to initiate proceedings against a patentee did not constitute a final agency action. Likewise, the mere decision to initiate disciplinary proceedings against Plaintiff is not a final agency action. As there has been no final agency action taken on the disciplinary proceeding against Plaintiff, his claim is not yet ripe for review, and he has no article III standing. *Bell Atlantic Cash Balance Plan* 976 F. Supp. at 379. Because this court has no Article III jurisdiction over agency actions which are not final, a threshold issue, it will not address the merits of Plaintiffs various claims for declaratory relief, and will dismiss Counts Second Three through Sixteen.

### D. Plaintiff's FOIA claim

The Court begins by noting that "the FOIA does not require a perfect search, only a reasonable one." *Rein v. U.S. Patent & Trademark Office*, 553 F.3d 353, 362 (4th Cir. 2009). A search may still be reasonable even if it is "limited to the places most likely to contain responsive documents." *Carter, Fullerton, & Hayes, LLC v. FTC*, 601 F. Supp. 2d 728, 735 (E.D.

13

Va. 2009)(quoting *Defenders of Wildlife v. U.S. Dept. of Interior*, 314 F. Supp.2d 1, 10 (D.C. Cir. 2004)).

Agency affidavits regarding the scope and thoroughness of a FOIA search "enjoy a presumption of good faith, which will withstand purely speculative claims about the existence and discoverability of other documents." *Ground Saucer Watch, Inc. v. C.I.A.*, 692 F.2d 770, 771 (D.C. Cir. 1981). Here Defendant USPTO argues that "it thoroughly searched the records of every individual involved in the investigation into Mr. Piccone's misconduct, as well as OED's internal database that tracks correspondence for investigations." (USPTO's Mem. at 24 (*citing* DEX 6 (Robinson Decl.) [Dkt. 26-6] ¶¶ 3-4, 7-8, 11, 14-15.)) While this search was "limited to only those individuals involved in the investigation into Mr. Piccone's misconduct," it was also "expansive enough to encompass *all* of the individuals most likely to contain responsive information." (*Id.* (*citing* DEX 1 (George Decl.) [Dkt. 26-1] ¶ 2; DEX 7 (Villarreal Decl.) [Dkt. 26-7] ¶¶ 3-5.)) The USPTO further avers that "[i]n conducting this search, OED personnel searched their electronic records for various permutations and misspellings of Mr. Piccone's name and investigative file number [and] OED personnel searched their paper records, and communal network drives and databases." (*Id.; see also* DEX 1 (George Decl.) ¶¶ 5-8; DEX 6 (Robinson Decl.) ¶¶ 3-4,7-8,11,14-15; DEX 7 (Villarreal Decl.)

14

¶¶3-5.) As these searches were undeniably thorough, and the USPTO has averred that these searches were reasonably calculated to find all information responsive to Plaintiff's request, the burden is on the Plaintiff to point to some "evidence sufficient to put the Agency's good faith into doubt." *Ground Saucer Watch*, 692 F.2d at 771. Plaintiff proposes seven arguments suggesting Defendant USPTO has acted in bad faith. None of those arguments holds water.

First, Plaintiff argues that any adequate search would necessarily contain the OED Director's files, as he claims that only a written grievance can to the OED Director can validly begin an expectation, and "only" the OED Director is "authorized by law: 1) to order the investigation of a practitioner such as Plaintiff; 2) to order the submission of a probable cause determination to the Committee on Discipline, and 3) to initiate the prosecution of practitioner by signing a complaint initiating a disciplinary case." (Pl.'s Opp'n at 5-7). However, as Defendants explain, C.F.R. §11.22(a) states that "[a]n investigation may be initiated when the OED Director receives a grievance, *information or evidence from any source* suggesting possible grounds for discipline." (emphasis added) Defendants also explain that it was not the OED Director who made the decision to institute the investigation into Plaintiff, but

15

Deputy Director Griffin, to whom the Director has delegated that authority.  (DEX 9 (Griffin Decl.) [Dkt. 35-1] ¶2.)

Second, Plaintiff argues that the USPTO must have inadequately searched its records because of references in released documents to communications to "interested third-party governing bodies via email and phone", yet the released documents only contain messages with one interested third party, the Massachusetts Board of Bar Examiners.  Pl.'s Opp'n. at 12-13.  Defendants more than adequately explain this apparent discrepancy however, by pointing out that the documents Plaintiff points to themselves reference "email *and phone*" communications.  (USPTO's Mem. at 15 (citing DEX 5 (Siehndel Decl.) [Dkt. 26-5], Att. C.))  While there were records of the email communications with the Massachusetts Board of Bar Examiners which could be discovered and disclosed, there were no records of phone conversations with the Pennsylvania Board of Bar Examiners.  (USPTO's Mem. at 16).

Third, Plaintiff argues that the presence of twenty draft declarations authored by a paralegal on the Vaughan Index without any accompanying emails is somehow a sign that e-mails have escaped the USPTO's search.  (Pl.'s Opp'n. at 16.)  The suggestion that a paralegal would send every draft of every declaration on which he worked to a colleague via e-mail is utterly incredible and does not merit serious discussion.  Even

16

if the lack of emails to accompany these draft declarations did tend to show that some emails escaped the USPTO's search, it says nothing about the reasonableness of the USPTO's search, and "the FOIA does not require a perfect search, only a reasonable one." *Rein* 553 F.3d at 362.

Fourth, Plaintiff flatly challenges the the USPTO's search terms as unreasonable because they did not include a search for just his initials or a search for his patent bar registration number. (Pl.'s Opp'n. at 17-18.) The USPTO did, however, run searches for various permutations of his name and his investigatory case file number. (DEX 1 (George Decl.) ¶¶ 5-8; DEX 6 (Robinson Decl.) ¶¶ 3-4,7-8,11,14-15; DEX 7 (Villareal Decl.) ¶¶ 3-5; DEX 13 (Mendel Decl.) ¶5; DEX 14 (Oleksa Decl.) ¶ 3; DEX 15 (Kepler Decl.) ¶ 4.) Furthermore, Plaintiff's conclusory assertion that the USPTO's selected search terms were unreasonable is not sufficient to overcome the "presumption of good faith" to which Agency affidavits are entitled. *SafeCard*, 926 F.2d at 1200.

Fifth, Plaintiff alleges that the USPTO has inadequately described the types and potential locations of files maintained by the OED, and thus there may be additional files which were missed in the FOIA response. (Pl.'s Opp'n at 18-19.) However, the Robinson Declaration explains that the OED maintains files in "(1) OEDIS ... (2) the official OED file,

17

which consists of a tri-fold paper file; (3) OED's shared computer drive; (4) an OED SharePoint site; and (5) each OED attorney's personal files." (USPTO's Mem. at 18 (citing DEX 12 (Supp. Robinson Decl.) [Dkt. 35-4] ¶4).) In the absence of any specific evidence presented by Plaintiff suggesting there are relevant files stored elsewhere, Plaintiff cannot show that this list is unreasonable.

Sixth, and finally, Plaintiff asserts that the USPTO must turn over records of telephone calls related to the investigation against him to be reasonable. However, as Defendants explain, "no telephone records specific to his OED investigation – or even OED investigations generally – exist." (USPTO's Rep. at 18.) (citing DEX 12 (Supp. Robinson Decl.) ¶¶ 6-7; DEX 10 (Supp. George Decl.) ¶¶ 3-4.) The USPTO has no way of knowing which phone calls in their call logs were related to Plaintiff's case. It is therefore reasonable not to include call logs in their response to Plaintiff's FOIA request.

Ultimately, the Plaintiff fails in his FOIA action because he has not demonstrated that he can point to anything other than the "purely speculative claims about the existence and discoverability of other documents," which will not be sufficient to defeat the presumption of good faith which follows Agency affidavits. *Ground Saucer* Watch, 692 F.2d at 770, 771.

Accordingly, the Court grants Defendant's Motion for Summary Judgment on Count One.

## IV. Conclusion

For the foregoing reasons, the Court grants Defendants' Motion for Summary Judgment on Count One, and Defendants' motions to dismiss Counts Two through Sixteen. An appropriate Order shall issue.

|  |  |
|---|---|
| October 27, 2015<br>Alexandria, Virginia | /s/<br>James C. Cacheris<br>UNITED STATES DISTRICT COURT JUDGE |